UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

COVETRUS, INC.

Plaintiff,

v.

AMAN TAFFERE

Defendant.

CIVIL ACTION
Docket No:

## VERIFIED COMPLAINT

Plaintiff COVETRUS, INC., ("Covetrus") by and through its undersigned

attorneys, Pierce Atwood LLP, as and for its Verified Complaint, complain as follows:

## PARTIES

1.     Plaintiff Covetrus, Inc., is a corporation incorporated under the laws of the

State of Delaware with a principal place of business in Maine.

2.     On information and belief, Defendant Aman Taffere ("Taffere") is a

natural person who resides in the State of Maine.

## JURISDICTION AND VENUE

3.     This Court may exercise subject matter jurisdiction over this action

pursuant to 28 USC § 1331, because this action arises under the laws of the

United States, and pursuant to 18 USC §1836(c), because this action arises

under the Defend Trade Secrets Act of 2016.

4.      The Court may exercise personal jurisdiction over Defendant because he resides or has sufficient minimum contacts in this judicial district and his numerous acts of wrongdoing took place within this judicial district.

5.      The United States District Court for the District of Maine is the appropriate venue for this action under 28 U.S.C. § 1391 because it is a judicial district where a substantial part of the events giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

### I.    *Covetrus's Business and Confidential Information.*

6.      Covetrus is a global animal-health technology and services company dedicated to supporting the companion, equine, and large-animal veterinary markets.  Covetrus's mission is to provide the best products, services, and technology to veterinarians and animal-health practitioners across the globe, so they can deliver exceptional care to their patients when and where it is needed.

7.      Covetrus's customer base is comprised principally of animal-health and veterinary practices and clinics in the companion-animal and equine markets in North America, Europe, and APAC & Emerging Markets.   These veterinary practices consist of both small, privately owned businesses and an increasing number of corporate-owned practices.  Covetrus also serves animal-health providers and producers and pet specialty retail stores.

2

8.      Covetrus offers a comprehensive portfolio of products and services and value-added solutions for enhancing practice revenue, operating efficient practices, and delivering high-quality care. By combining extensive infrastructure and logistical expertise with robust software and ordering tools, a broad product offering at competitive prices, a suite of add-on business and financial services, and a strong commitment to customer service, Covetrus strives to be an indispensable and trusted partner for its customers' evolving needs.

9.      When setting the pricing of its products and services, Covetrus evaluates a great deal of confidential customer and business information, including supply of certain products and services; the demand of those products and services; wholesale pricing of those products and services; Covetrus expense and profit figures; financial projections; patterns of customer purchases; differentiation between supply/demand by geographic location; the nature and background of each of its customers; and information related to the business models of its customer base, among other information.

10.     If Covetrus's competitors gained access to any of this information, they could easily undercut Covetrus's prices, misappropriate Covetrus's business plans and forecasts, and divert business from Covetrus's customer base by improper means.

3

11.     Further, if any such information were publicly distributed by any means, Covetrus's customers and vendors would lose trust in Covetrus's ability to maintain the privacy and confidentiality of those individuals and entities.

12.     Loss of this trust and goodwill would be devastating to Covetrus's reputation and goodwill in the market.

13.      Covetrus's employees and customers also trust it to maintain the privacy of their confidential information.

14.     Indeed, the continued success of Covetrus depends on the trust customers place in it to meet their business needs and to protect their confidentiality, as well as the privacy of their contact information, order history, and other business-related information.

15.     Loss of this trust by virtue of a breach by a disgruntled former employee could have a devastating ripple effect on Covetrus's nationwide operations.

16.     To maintain that trust and protect such valuable information, Covetrus employs significant protective measures including, without limitation, cybersecurity software; data loss protection tools; disablement of USB drives on company computers; programs and training for its electronic systems; having all employees sign confidentiality and non-disclosure agreements; installing extensive physical security measures at Covetrus facilities; implementing various levels of password protection for Covetrus's electronic systems, including two-factor authentication;  and only allowing need-to-know access to information for certain job titles.

#18377209v5

17.     Further, Covetrus requires employees to use Okta Verify to access their Covetrus account on a remote or mobile device.

18.     Covetrus also requires employees to use GlobalProtect, a secure virtual private network, to access confidential and proprietary information of Covetrus.

19.     Covetrus also uses applications such as Medallia, Workday and SalesForce, to securely store a significant volume of trade secrets, and confidential and proprietary information related to Covetrus's business plans, pricing, business models, and customers.

## II.     *Taffere's Employment with Covetrus.*

20.     On or about February 13, 2024, Covetrus offered Taffere the position of Senior Exceptions Representative, based in Portland, Maine.

21.     Taffere performed or was expected to perform the job duties set forth in the Senior Exceptions Representative job description, which is attached as **Exhibit A**.

22.     These job duties included regularly communicating with Covetrus customers and company sales and service representatives; tracking and monitoring customer order and return history; updating databases and recording / reporting information concerning returns, replacements, sales orders, and delivery schedules; handling, tracking, maintaining records, and communicating with customers regarding specific orders, errors,

pricing, discounts, deliveries, order history, complaints, and order status, among other things.  See Ex. A.

23.    The job description also required Taffere to "[v]iew confidential and sensitive materials and information and maintain complete confidentiality."  Id.

24.    Covetrus hired Taffere in a fully remote position in which he would perform his job from his home office in Gorham, Maine, using a company-issued laptop computer.

25.    As part of his job as Senior Exceptions Representative, Taffere had access to a significant amount of Covetrus's confidential and proprietary information, including, without limitation, lists of customers; customer order history; customer and provider addresses, email addresses, and phone numbers; pricing information and strategies; marketing information; Covetrus's confidential trainings, policies, and procedures; and Covetrus's electronic systems and software, among other types of information that would constitute trade secrets or confidential information under applicable state and federal law.

26.    Taffere had access to Medallia, Workday and SalesForce, among others, which are applications that include a significant volume of confidential and proprietary information regarding Covetrus's business and customers.

27. Covetrus's offer of employment to Taffere was contingent upon, among other things, Taffere's agreement to Covetrus's Invention and Non-Disclosure Agreement (the "NDA").

28. On February 13, 2024, Taffere executed and agreed to the NDA.

29. A true and correct copy of the NDA, with Taffere's electronic acceptance, is attached hereto as **Exhibit B**.

30. The NDA is a binding contract between Covetrus and Taffere.

31. In the NDA, Taffere agreed to, among other things, the following:

    a. During the course of his employment, he would have access to Covetrus's confidential and proprietary information, as well as trade secrets, confidential personnel and customer information, among other information protected by applicable law;

    b. During and after his employment with Covetrus, he would protect and use best efforts to safeguard Covetrus's trade secrets, and confidential and proprietary information;

    c. During and after his employment with Covetrus, he would not disclose, publish, communicate, or make available Covetrus's confidential and proprietary information to any person or entity, other than authorized employees of Covetrus, for any purpose other than in the performance of his duties as an employee of Covetrus;

    d. During and after his employment with Covetrus, he would not copy any documents, records, files, media or other resources containing

trade secrets or confidential and proprietary information of Covetrus, or remove any such resources from Covetrus's premises or control of Covetrus, except in the performance of his duties as an employee of Covetrus.  <u>See</u> Ex. B ¶ 2.a.–b.

32.    The NDA also provided, in Paragraphs 2.d. and 6 therein, that it should not be construed as to limit or prevent Taffere from engaging in protected activity under the Defend Trade Secrets Act of 2016.

33.    The NDA also provided, in Paragraph 3, that all intellectual property developed by Taffere related to Covetrus's business is the exclusive and sole property of Covetrus.

34.    In the NDA, Covetrus asked Taffere to list any Pre-Existing IP Rights in Schedule I to the NDA.  <u>See</u> Ex. B ¶ 3.d.

35.    In the NDA, Covetrus and Taffere agreed that, "[i]f no list of Pre-Existing IP Rights is attached as Schedule I, the Employee represents that there are no Pre-Existing IP Rights."  <u>Id.</u>

36.    Taffere has never provided any list of Pre-Existing IP Rights attached as Schedule I to the NDA, or in any other medium or form.

37.    Under Paragraph 10.a. of the NDA, Taffere agreed that any breach of the NDA would likely cause Covetrus substantial and irrevocable damage that is difficult to measure, and that Covetrus would have the right to obtain an injunction restraining any such breach or threatened breach.

#18377209v5

38. On or about March 11, 2024, Taffere began his employment with Covetrus as Senior Exceptions Representative, working remotely out of his home office in Gorham, Maine.

39. As an employee of Covetrus, Taffere agreed to be bound by the company's policies, including but not limited to policies set forth in Covetrus's Employee Handbook ("Handbook").

40. The Handbook included numerous policies and procedures regarding Covetrus property, work-from-home arrangements, and electronic systems, among other things.

41. The Handbook included a Remote Work Policy regarding working from home, which provided, among other things:

> Consistent with the organization's expectations of information security for employees working at the office, remote employees will be expected to ensure the protection of proprietary company and customer information accessible from their home office. Steps include the use of locked file cabinets and desks, regular password maintenance, and any other measures appropriate for the job and the environment.

42. The Handbook also contained an Electronic Systems Policy regarding Covetrus's electronic systems, computers, and other devices, which advised employees that "[s]ince the computer is provided to you for business use, please understand that your computer may be monitored at any time at the Company's sole discretion."

43. The Handbook also contained a policy regarding Personal Property and Expectations of Privacy, which advised employees that Covetrus may

#18377209v5

search computer systems to determine the presence of any illegal or inappropriate items including unauthorized Covetrus information or property, and that employees should "have no expectation of privacy rights regarding searches of company property."

44. The Handbook also contained a policy regarding use of Social Media and Internet Platforms, which explicitly instructed employees to protect non-public and confidential Covetrus information and to never disclose such information in a manner that is not authorized or permissible.

45. Finally, the Handbook contained a policy regarding employee use of surveillance devices in the workplace, which instructed employees that Covetrus "prohibits employee use of recording devices such as cameras, camera phones, smart phones, tape recorders, or any other recording device which may pose a threat to employees and Company privacy."

46. During his employment with Covetrus, Taffere was provided a company-issued laptop, which contained confidential and proprietary information.

47. Taffere performed a significant amount of Covetrus business on his company-issued laptop, which included access to and communications regarding non-public and confidential customer and business information, such as information regarding pricing, customer order history, and customer contact information, payment and credit information, among other things.

10

48.    Taffere had the ability to download the aforementioned confidential information onto his laptop through many of the various electronic tools and systems he was given access to as a Covetrus employee, and as discussed below, he in fact did download a significant quantity of such information onto the laptop.

49.    On or about June 26, 2025, Covetrus notified Taffere that his employment was being terminated effective the following day, June 27.

50.    Simultaneous with the termination of Taffere's employment, Covetrus took steps to protect its confidential information by immediately disabling Taffere's access to Covetrus's electronic tools and systems.

51.    During the meeting in which Taffere was informed of the termination of his employment, Covetrus personnel instructed Taffere to return his company-issued equipment, including the company-issued laptop described above, as soon as possible, and he was shortly thereafter provided a shipping box, label, and instructions for this purpose.

52.    An initial set of instructions for returning the laptop was sent to Taffere on July 7, 2025, and when he failed to return the laptop, additional requests to return the laptop were sent on July 15 and July 21. A true and accurate copy of the written requests and instructions for Taffere to return the laptop is attached as **Exhibit C**.

53.     Unbeknownst to Covetrus, at the time of the termination of Taffere's employment, Taffere had already downloaded at least 400 files containing confidential and proprietary Covetrus information, as well as trade secrets.

### III.    *Taffere's Unlawful Retention of Company Equipment and Transmission of Trade Secrets, and Confidential and Proprietary Information Following His Termination from Covetrus.*

54.     On or about July 16, 2025, Taffere sent an email to Covetrus's Vice President for North America Human Resources, Elise Lieberman, entitled "Formal Response to Termination and Severance Offer." A true and accurate copy of this email is attached as **Exhibit D** (with relevant portions highlighted).[1]

55.     Attached to this email were (i) a text message regarding Covetrus business and personnel; (ii) an email from Kim Brebner, VP for Customer Experience, regarding confidential business plans and restructuring; and (iii) a video recording of a conversation regarding Covetrus business.

56.     In that email, Taffere indicated that, on or about June 25, 2025, he had sent or was in the process of sending, "approximately 400 screenshots and audio recordings" regarding Covetrus's business to an attorney not employed by Covetrus. See Ex. D.

57.     Taffere did not have authorization from anyone at Covetrus to send any such information to any third party not employed by Covetrus.

---

[1] Exhibit D is partially redacted to protect certain privileged and/or confidential information and attachments that Taffere included in his email, which are not germane to this Complaint.

#18377209v5

58. Taffere stated that this information covered "internal communications, procedural issues, and [his] interactions with key personnel," such as those in the documents attached to the email. See Ex. D.

59. On information and belief, those 400 screenshots and audio recordings contained confidential, proprietary and trade secret information covered by the NDA, as well as applicable state and federal law.

60. Taffere's download and transmission of this information expressly violated the NDA and various Covetrus policies.

61. In his July 16 email, Taffere also stated that he maintains a security camera in his home office that is able to capture activity related to his company-issued computer. See Ex. D.

62. Taffere did not obtain authorization from or inform anyone at Covetrus regarding use of a security camera to record his home workstation or any confidential, proprietary or trade secret information of Covetrus.

63. On information and belief, the security camera in Taffere's home office has captured and recorded significant amounts of Covetrus's confidential, proprietary and trade secret information, which Taffere continues to maintain in his possession notwithstanding the termination of his employment from Covetrus.

64. Taffere's use of a security camera in his home office expressly violated Covetrus's policy regarding surveillance and recording devices.

#18377209v5

65.     Finally, in his July 16 email, Taffere told Ms. Lieberman that, if Covetrus did not agree to his terms by July 29, 2025, he would move forward with "a public social media campaign to bring awareness to this situation." See Ex. D.

66.     Covetrus understands this threat to mean that Taffere will publicly post and disclose non-public information on a social media site if Covetrus does not meet his demands.

67.     On or about July 22, 2025, Taffere sent another email to Elise Lieberman, entitled "Notice of Evidence Preservation," forwarding another email sent to cvet@connection.com that same day. A true and accurate copy of this email chain is attached as **Exhibit E** (with relevant portions highlighted).

68.     In this email, Taffere acknowledged that he was in possession of the company-issued laptop that Covetrus assigned to him during his employment. See Ex. E.

69.     Taffere claimed that he refused to return the laptop and would retain it to "protect the integrity of potentially criminal digital evidence" based on his allegation that Covetrus was unlawfully monitoring his activity. Id.

70.     Taffere's claim of unlawful activity by Covetrus is baseless because (i) the laptop is Covetrus property; (ii) pursuant to Covetrus policies and procedures, Covetrus has the right to monitor all employee activity on company-issued devices; and (iii) there is no expectation of privacy for employees when using company-issued equipment or electronic systems.

71.     Indeed, in an email on December 6, 2024, to all customer support employees, which included Taffere, Covetrus expressly informed Taffere that the company was using Five9 software that would "live monitor and record desktop interactions," along with audio and screen recording of customer calls, on company laptops.  A true and accurate copy of this email is attached as **Exhibit F**.

72.     For the above reasons, any reports Taffere has made or may make to federal or state authorities regarding alleged unlawful activity on the part of Covetrus would not be in good faith.

73.     Despite Covetrus's numerous demands to return company-issued equipment, Taffere remains in possession of Covetrus property and has refused to return it.

### IV.     *Taffere Threatens to Publicly Publish Confidential and Proprietary Information on Social Media beginning on August 1, 2025.*

74.     On or about July 28, 2025, Taffere sent an additional email to Ms. Lieberman, entitled "Covetrus File #8," in which he made several threats and attached a number of confidential documents and communications that are improperly in Taffere's possession.  A true and accurate copy of this email is attached as **Exhibit G** (with relevant portions highlighted).[2]

---

[2] Exhibit G is partially redacted to protect certain privileged and/or confidential information and attachments that Taffere included in his email, which are not germane to this Complaint.

75.  In this email, Taffere again made clear that "I will not return the company-issued laptop until it is examined by a certified forensic expert" and that "[i]f Covetrus attempts to compel its return through legal channels, I welcome the opportunity to accelerate discovery." <u>See</u> Ex. G.

76.  Taffere also threatened to "notif[y] VTS and its owner, David Sawicki, of potential intellectual property violations" related to intellectual property regarding Covetrus's business, which, under the NDA, Taffere agreed was the property of Covetrus.  <u>Id.</u>

77.  Finally, and perhaps most alarmingly, Taffere told Ms. Lieberman that "**I plan to begin publicly sharing my experience on social media starting Friday, August 1**.  The campaign will be hosted under the account name "Corporate Pet Pharmacy Chronicles." <u>Id.</u> (emphasis added).

78.  Taffere said that he would share his "personal experience, the work [he] completed, and comparisons to case handling by senior agents." <u>Id.</u>

79.  Taffere said he would not reveal any "order numbers, client names, or information that could violate client privacy;" however, he did not confirm that his posting would preserve the confidentiality of Covetrus's trade secrets or confidential and proprietary information, and his threats to share information about his work suggest that his planned posting would include such protected information.  <u>Id.</u>

80.  Also on July 28, 2025, Taffere sent a second email to Ms. Lieberman to which he attached numerous other instances of confidential material, including

16

screenshots of emails with Covetrus customers reflecting their names and partial order information.

81.     Based on Taffere's emails, statements and admissions to Ms. Lieberman, downloading and misappropriation of at least 400 Covetrus files, and retention of Covetrus's property, it is clear that Taffere's planned public postings will violate his legal and contractual obligations to Covetrus and its customers.

82.     Based on the above emails sent from Taffere to Ms. Lieberman, Taffere began sending confidential and proprietary Covetrus information, emails, files and documents to his personal email well before his employment was terminated.

83.     Accordingly, Taffere has a significant volume of trade secrets and confidential and proprietary Covetrus information on his own personal devices, in his personal email account, or in another storage device or location that is not authorized by Covetrus and places the security of Covetrus's trade secrets, and confidential and proprietary information at risk.

84.     On or about July 30, 2025, counsel for Covetrus sent Taffere a letter instructing him to, among other things, (i) cease and desist from continuing to violate his legal and contractual obligations to Covetrus; (ii) return the company-issued laptop, as well as all Covetrus information and property, immediately; and (iii) not publicly disclose any Covetrus confidential

information or trade secrets, as he threatened.  A true and accurate copy of the July 30 letter is attached as **Exhibit H**.

85.    In that letter, counsel for Covetrus told Taffere that Covetrus would move for immediate injunctive relief if he did not comply with all the terms set forth therein by July 31, 2025.  See Ex. H.

86.    As of the date of this Verified Complaint, Taffere has not complied with the terms contained in the above-rerefenced letter and has not returned any of Covetrus's property.

87.    Instead, Taffere responded to the July 30 letter by email to Covetrus's counsel, and reiterated that he would not return the laptop containing Covetrus's confidential information.  A true and accurate copy of the July 30 email from Taffere is attached as **Exhibit I**.

88.    Also on July 30, 2025, counsel for Covetrus reported Taffere's theft of its laptop to the Gorham Police Department with the hope that law enforcement could obtain possession of the stolen property.  Law enforcement visited Taffere's home in Gorham, but reported to Covetrus's counsel that Taffere refused to give them the laptop, and told them that the laptop was not located in his home.

89.    As a result of Taffere's violation of the NDA, improper retention and transmission of trade secrets and confidential and proprietary Covetrus information, retention of Covetrus's property, as well as other wrongful conduct on behalf of Taffere, Covetrus has suffered, and will suffer,

damages in the form of, among other things, lost goodwill, lost public confidence, and lost customers, as well as monetary damages.

## COUNT 1 – BREACH OF CONTRACT

90. Covetrus incorporates all of the allegations of Paragraphs 1 through 89 as if set forth fully herein.

91. The NDA described herein constitutes a valid and enforceable contract between Taffere and Covetrus.

92. As stated in the NDA, Taffere agreed, among other things, that he would:

   a. Not misuse or disclose Covetrus'ss confidential and proprietary information and trade secrets, including but not limited to nonpublic information concerning Covetrus's clients, customers, business, sales, and pricing; and

   b. Take all necessary and appropriate steps to safeguard Covetrus's confidential and proprietary information and trade secrets, and to protect them against disclosure.

93. Covetrus has complied with all of its obligations under the NDA.

94. As detailed above, Taffere has breached, continues to breach, and threatens to further breach the NDA, by, among other things,

   a. Misusing, retaining, transferring, and/or disclosing Covetrus's confidential information, including but not limited to, its customer lists and/or relationships, contracts, pricing information, emails, and other confidential and proprietary information;

b. Disclosing confidential information and trade secrets to unauthorized third parties; and

c. Retaining electronic devices that contain confidential information and trade secrets.

95. As a direct and proximate result of Taffere's breaches of the NDA, Covetrus has suffered and will continue to suffer irreparable harm, as well as substantial monetary damages.

96. Pursuant to the NDA, Covetrus is entitled to injunctive relief.

97. Covetrus has also sustained actual losses, including expenditures of money to address and remediate Taffere's wrongdoing, as well as losses that cannot be adequately remedied with a money award.

## COUNT 2 – CONVERSION

98. Covetrus incorporates all of the allegations of Paragraphs 1 through 97 as if set forth fully herein.

99. Covetrus owns the company-issued laptop and information contained therein, as well as any other Covetrus information or property, that remains in Taffere's possession.

100. Covetrus demanded that Taffere return the Covetrus property described herein.

101. In response to Covetrus's demand, Taffere refused to return any of the Covetrus property described herein.

#18377209v5

102.   As a result of Taffere's knowing and willful retention of and refusal to return Covetrus's property, Covetrus has suffered and continues to suffer damages.

103.   Accordingly, Taffere is liable for conversion.

104.   As a direct and proximate result of Taffere's conversion, Covetrus has suffered and will continue to suffer irreparable harm, as well as actual losses, including expenditures of money to address and remediate Taffere's wrongdoing.

## COUNT 3 – VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016 ("DTSA")

105.   Covetrus incorporates all of the allegations of Paragraphs 1 through 104 as if set forth fully herein.

106.   The DTSA, 18 U.S.C. § 1836 et seq., prohibits the misappropriation of Covetrus's trade secrets and imposes both civil and criminal penalties for such misappropriation.

107.   As described herein, Taffere misappropriated Covetrus's trade secrets when, both during and after the termination of his employment, Taffere (i) retained, without permission, a Covetrus-owned laptop containing a significant volume of trade secrets, and confidential and proprietary information; (ii) downloaded and transmitted at least 400 files containing trade secrets and Covetrus's confidential and proprietary information, without Covetrus's authorization and in violation of his contractual

promises, to third parties unaffiliated with Covetrus; (iii) recorded or copied trade secrets and confidential and proprietary Covetrus information by means of a recording device, security camera or telephone; and (iv) emailed trade secrets and confidential and proprietary Covetrus information to his personal email account.

108.    Taffere has kept and retained those files for his use and benefit.

109.    Taffere's actions, as described herein, constitute "misappropriation" by "improper means" under 18 U.S.C. § 1839(5)(A).

110.    The files Taffere misappropriated, as described herein, constitute "trade secrets" of Covetrus under 18 U.S.C. § 1839(3).

111.    The trade secrets Taffere misappropriated, as described herein, are related to the products and services Covetrus offers, or intends to offer, in interstate commerce.

112.    Taffere's actions, as described herein, were "willful and malicious" under 18 U.S.C. § 1839(b)(3)(C).

113.    As a result of Taffere's willful and malicious misappropriation of Covetrus's trade secrets, Covetrus has suffered and will continue to suffer irreparable harm, as well as actual losses, including expenditures of money to address and remediate Taffere's wrongdoing, as well as losses that cannot be adequately remedied with a money award.

#18377209v5

## <u>COUNT 4 - VIOLATION OF THE MAINE UNIFORM TRADE SECRETS ACT</u>
## <u>("MUTSA")</u>

114.  Covetrus incorporates all of the allegations of Paragraphs 1 through 113 as if set forth fully herein.

115.  The MUTSA, 10 M.R.S. Ch. 302, prohibits the misappropriation of Covetrus's trade secrets.

116.  As described herein, Taffere misappropriated Covetrus's trade secrets when, both during and after the termination of his employment, Taffere (i) retained, without permission, a Covetrus-owned laptop containing a significant volume of trade secrets, and confidential and proprietary information; (ii) downloaded and transmitted at least 400 files containing trade secrets and Covetrus's confidential and proprietary information, without Covetrus'ss authorization and in violation of his contractual promises, to third parties unaffiliated with Covetrus; (iii) recorded or copied trade secrets and confidential and proprietary Covetrus information by means of a recording device, security camera or telephone; and (iv) emailed trade secrets and confidential and proprietary Covetrus information to his personal email account.

117.  Taffere's actions, as described herein, constitute "misappropriation" by "improper means" under 10 M.R.S. §§ 1542(1) and (2).

118.  The files Taffere misappropriated, as described herein, constitute "trade secrets" of Covetrus under 10 M.R.S. § 1542(4).

119.    Taffere's actions, as described herein, were "willful and malicious" under 10 M.R.S. § 1544(2).

120.    As a result of Taffere's willful and malicious misappropriation of Covetrus's trade secrets, Covetrus has suffered and will continue to suffer irreparable harm, as well as actual losses, including expenditures of money to address and remediate Taffere's wrongdoing, as well as losses that cannot be adequately remedied with a money award.

## PRAYER FOR RELIEF

WHEREFORE, Covetrus requests that the Court enter judgment against Defendant Aman Taffere awarding:

1.    Judgment in favor of Plaintiff Covetrus on all counts;

2.    Temporary, preliminary, and permanent injunctive relief against Defendant in which the Court orders as follows:

a.    An order that Taffere refrain from publicly disclosing any Covetrus trade secrets, confidential or proprietary information, or making any statements related thereto, on social media or otherwise;

b.    An order that Taffere comply with the remaining terms of the NDA;

c.    An order enjoining Taffere to forever refrain from accessing, using, copying, disseminating, or making any use in any way whatsoever of any Covetrus documents, digital files, or material in any form or at any location whatsoever, or the information contained therein;

24

d. An order enjoining Taffere to state, under penalty of perjury and within two days of such order, each occasion whereupon he made any copy or transfer of any Covetrus documents, including by identifying the electronic device, location, or account where Taffere placed or transferred that copy;

e. An order enjoining Taffere to state, under penalty of perjury and within two days of such order, each person or entity he reasonably believes to possess a copy of any Covetrus documents and described how and when any such person or entity received such a copy;

f. An order enjoining Taffere to identify, under penalty of perjury and within two days of such order, each electronic device in his household or otherwise in his possession, custody, or control and which is capable of storing documents, and to preserve the contents of those devices without change or alteration;

g. An order enjoining Taffere, within two days of such order, to produce each electronic device in his household or otherwise in his possession, custody, or control to Covetrus, or a person of the Court's choosing, to examine that device and verifiably and permanently delete all Covetrus documents and information contained thereon;

h. An order enjoining Taffere, within two days of such order, to provide access to each electronic account in his possession, custody, or control to a person of the Court's choosing, to examine said account(s), for any

25

and all Covetrus documents and information sent to or received by such account(s);

i.  An order enjoining Taffere, within two days of such order, to return all information, documents or electronic communications he removed from Covetrus's property and that remains in his possession, custody or control;

j.  An order enjoining Taffere, within two days of such order, to return all Covetrus property, including, without limitation, any Covetrus-issued laptops or other electronic devices, that remain in his possession, custody or control.

3.  Compensatory, exemplary and punitive damages;

4.  Money damages sufficient to compensate Plaintiff for its losses;

5.  Maintain jurisdiction over this matter for the purpose of enforcing and overseeing Defendant's compliance with any injunctive relief issues; and

6.  Reasonable attorneys' fees, interest, costs, expenses, and such other relief as the Court may deem just and equitable.

#18377209v5

Dated:        July 31, 2025

/s/ *Peter A. Hale*
Peter A. Hale, ME Bar No. 4348
Daniel R. Strader, ME Bar No. 6112
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
(207) 791-1100
phale@pierceatwood.com
dstrader@pierceatwood.com

Attorneys for PLAINTIFF

## VERIFICATION

I, Elise Lieberman, am the Vice President, North America Human Resources for Covetrus, Inc., the Plaintiff in this action.  I declare under penalty of perjury that the facts and allegations in the foregoing Verified Complaint are, to the best of my knowledge and belief, true and correct, and to the extent any of the foregoing facts and allegations are not personally known to me, I believe them on information and belief to be true and correct.

Dated: July 31, 2025

Elise Lieberman
Vice President, North America Human Resources
Covetrus, Inc.

#18377209v5

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2025, I electronically filed the foregoing document via email with the United States District Court Clerk of the Court for the District of Maine, with a copy by email to Defendant Aman Taffere, and will serve the same upon Defendant Aman Taffere via the following address:

Aman Taffere
244 Fort Hill Rd.
Gorham, ME 04038
taffareaman@gmail.com

Dated: July 31, 2025                    /s/Daniel R. Strader
                                        Daniel R. Strader
                                        PIERCE ATWOOD LLP
                                        Merrill's Wharf
                                        254 Commercial Street
                                        Portland, ME 04101
                                        Tel: (207) 791-1100
                                        Fax: (207) 791-1350
                                        dstrader@pierceatwood.com

                                        Counsel for Plaintiff

#18377209v5