UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| COVETRUS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00395-LEW |
| | ) | |
| AMAN TAFFERE, | ) | |
| | ) | |
| Defendant | ) | |

**ORDER GRANTING SUPPLEMENTAL
PRELIMINARY INJUNCTIVE RELIEF**

This matter is again before the Court on the question of the appropriate scope of preliminary injunctive relief.  *See* Pl.'s Mot. to Alter or Amend Court's Order Granting Prelim. Inj. (ECF No. 39).  For reasons that follow, I award a measure of supplemental injunctive relief.

**BACKGROUND**

In my September Order on Motion for Emergency Relief (ECF No. 31), I awarded injunctive relief to Plaintiff Covetrus Inc. because it demonstrated that Defendant Aman Taffere refused to return a company laptop at the conclusion of his employment and advised Plaintiff's human resources department that he had hundreds of screenshots of Plaintiff's confidential information in his possession, which he threatened to disclose, despite his contractual obligation to return the laptop and all of Plaintiff's confidential information at the conclusion of his employment, without retaining any such information.

Based principally on the improper collection of screenshots and the threat of dissemination, I concluded that Plaintiff had demonstrated that it would suffer irreparable injury in the absence of injunctive relief that prohibited reproduction and dissemination. Because the remaining preliminary injunction factors also supported an award of injunctive relief, I ordered the return of the company laptop and enjoined Defendant "to refrain from accessing, using, copying, disseminating, or making any use in any way whatsoever of any Covetrus documents, digital files, or material in any form whatsoever, or the information contained therein." *Id.* at 14-15. I did not at that time compel Defendant to turn over for imaging personal media in his possession that could contain Plaintiff's confidential information, such as Defendant's iPhone and Gmail account. At that time, I concluded that the essential relief needed to prevent irreparable injury to Plaintiff on an emergent basis was a turnover of its laptop and a prohibition on the use or dissemination of its information, requirements that I had faith that Defendant would comply with, leaving for later consideration the matter of his personal media. Although Defendant's continued possession of offending files consisting of screenshots and the like is unjustified by law or reason, returning the laptop and enjoining any dissemination of Covetrus information met the more dire exigencies of the situation presented.

However, I ordered Defendant to prepare a declaration stating "each occasion in which he made any copy of any Covetrus documents, other than on the Covetrus laptop, including by identifying the electronic device or location where he placed that copy," and I specified that Plaintiff could seek further relief depending on what the declaration revealed. *Id.* at 15. In response to the Order, Defendant filed a declaration stating that the

Covetrus-related materials he still has in his possession are located on his personal iPhone and his Gmail account. Def.'s Sworn Decl. ¶ 3 (ECF No. 32). Defendant did not offer any information concerning the occasions on which he made his copies. Nor did he identify any of the documents he acknowledges having in his possession. But the Order was not very clear in terms of commanding Defendant to positively identify what is depicted in the Covetrus materials remaining in his possession.

Dissatisfied with Defendant's initial declaration, Plaintiff's counsel corresponded with Defendant and requested that he amend his declaration to comply with the Order. Defendant then amended his declaration. Am. Decl. (ECF No. 38-1). Defendant elaborated that "[b]etween approximately March 2025 and June 2025, [he] captured screenshots on [his] iPhone of certain Teams chats and customer-email exemplars for the purpose of seeking legal advice and documenting [his] concerns." *Id.* ¶ 6. Additionally, "[o]n a few occasions in or before June 2025, … [Defendant] used the Windows Snipping Tool on the Covetrus-issued laptop to capture portions of on-screen content and then emailed those image files to [his] personal Gmail account." *Id.* ¶ 7. Reading between the lines, Defendant has generalized his response to avoid reviewing the documents themselves, presumably in compliance with the Order, which enjoined accessing or using the documents in question. With this requirement in place, arguably Defendant was not authorized to review and disclose the content depicted in these image files.

Defendant has since filed a further "clarification" based on follow-up communications with Plaintiff's counsel. He explains that in connection with this case he previously "created PDF exhibit copies from iPhone screenshots" for filing and service

purposes, without the involvement of any personal computer other than his iPhone. Notice of Clarification (ECF No. 40). More particularly, in the process of printing certain screenshots, Defendant's iPhone made temporary "print preview" files that were not stored as separate files on his iPhone and served only the function of enabling print outs for filing and service.

## DISCUSSION

Based on Defendant's responses, Plaintiff requests additional preliminary injunctive relief. Specifically, Plaintiff requests that I order Defendant "to turn over his personal iPhone and grant access to his personal email address to forensic examiner Stroz Friedberg for imaging and purging of files containing Covetrus documents and information." Pl.'s Mot. to Alter or Amend Court's Order Granting Prelim. Inj. (ECF No. 39). Plaintiff rests its request "upon the arguments previously submitted to this Court in the Motion for TRO," and seeks both imaging of Plaintiff's iPhone and Gmail account and "purging" by the previously appointed forensic examiner. *Id.* at 2-3. Plaintiff proposes that I grant the relief pursuant to Rule 59. *Id.* at 1 (citing Fed. R. Civ. P. 59(e)).

Defendant opposes the Motion and argues that the request is overbroad and unnecessarily invasive. Def.'s Opp'n (ECF No. 49). He also disputes the applicability of Rule 59, invokes the specificity requirement of Rule 65(d), and insists that Plaintiff's ability to access the discoverable content of his iPhone and Gmail account is a matter for ordinary discovery under Rules 26 and 34, which call for less intrusive approaches than imaging. *Id.* at 1-2, 5.

In reply, Plaintiff observes that the unlawful retention of its confidential documents and information is undisputed and that based on this fact "the Court should amend its Order to require Defendant to return this information to Covetrus and purge his devices and email account of this information, just as it did with the Covetrus laptop." Reply at 1 (ECF No. 50). Plaintiff then dials back its initial request slightly, stating that its only interest is in Covetrus-related information and that it "would expect any imaging or review of Defendant's devices to be subject to reasonable parameters to sufficiently protect Defendant's personal information." *Id.* at 4.

I address the current Motion as a previously authorized follow-up to the prior proceedings concerning the appropriateness of preliminary injunctive relief, including supplemental relief. After all, the record on this matter was expressly left open precisely for that purpose. Furthermore, as an interlocutory order, the Order on Motion for Emergency Relief remains subject to revisitation and refinement. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005); *In re Cabletron Sys., Inc.*, 311 F.3d 11, 22 n.2 (1st Cir. 2002); Fed. R. Civ. P. 54(b).

"To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). As the party seeking injunctive relief, Plaintiff bears the burden of establishing that the factors weigh in its favor. *Nat'l Org. for Marriage v. Daluz*, 654 F.3d 115, 117, 119-20 (1st Cir. 2011).

5

Based on the record, I am persuaded by Plaintiff that a further measure of relief is appropriate in this case and that the particulars of what Defendant has retained is not purely a matter of ordinary discovery. It is undisputed that Defendant has retained hundreds of screenshots and "snips" depicting Covetrus information (hereafter, "offending materials") that he is not authorized to retain and is, to the contrary, contractually obliged to relinquish. Defendant has not suggested that he has any lawful use in mind for the offending materials. Instead, he appears to believe that he should be entitled to hold onto them pending litigation and disclose them only in the course of discovery.[1]

Given the nature of Defendant's contractual obligation to his former employer, there is a substantial likelihood that Plaintiff will succeed on, at the least, its claim for breach of contract. Additionally, irreparable injury is established because Defendant's retention of the documents in this form serves only as a looming threat[2] to Plaintiff that Defendant might disobey a court order and do something rash (or inadvertent) to cause Plaintiff an injury that the Court would have great difficulty measuring and that Defendant would lack the means to compensate. This is a sufficient showing of irreparable injury. *See*, *e.g.*,

---

[1] Defendant also states that he used his iPhone's video recording feature to record conversations with Covetrus personnel but placed his iPhone so that it captured only audio and not any screenshots. Am. Decl. ¶ 10. I am not persuaded by Plaintiff that any imaging or purging would be appropriate in the context of these video recordings. Ultimately, these recordings will need to be produced in discovery, but I see no cause to require their imaging or copying and purging by the forensic examiner. If it comes to pass that there is video capture of confidential information the Court can provide further injunctive relief at that time.

[2] "'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Cmty.Health Ctr.*, *Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005). Because the ongoing retention of offending materials is unlawful, and because the retention is undisputed, I find that the availability of permanent injunctive relief at the conclusion of this case should not stand in the way of an award of preliminary injunctive relief.

*Legend Biotech USA Inc. v. Liu*, No. 2:23-cv-02965, 2024 WL 919082, at *9 (D.N.J. Mar. 4, 2024) ("[I]f Plaintiff can demonstrate it is probable Defendant is still in possession of its confidential and proprietary information, it will be able to show a probability of irreparable harm." (citing cases)).

Finally, the remaining injunctive relief factors, balance of harms and public interest, also favor the honoring of contracts and the preservation of proprietary information. Only if the injunctive relief were too extreme would these latter factors tip in favor of Defendant.

Thus, the concern is for the scope of the remedy. I agree with Defendant that it would be disproportionate to order the imaging of his entire iPhone and Gmail account. That remedy is overly burdensome given the privacy interest at stake, at least where, as here, the defendant has openly acknowledged the creation and existence of the offending materials and has not engaged in subterfuge. At the same time, I also agree with Plaintiff that the offending materials should be isolated and purged from these locations. Although the parties have given me little to work with in fashioning relief that is measured to the situation at hand, I am confident that the forensic examiner will have little difficulty identifying the screenshots and snips that Defendant has described. To this end, I now authorize a forensic examination and remediation process of an appropriate scope that will:

> (1) produce for Plaintiff copies of the offending materials for evidentiary purposes;
>
> (2) purge all of the offending materials from Defendant's iPhone and Gmail account; and
>
> (3) ensure Defendant that no other contents of his iPhone and Gmail account will be imaged or produced to Plaintiff.

## CONCLUSION

Plaintiff's Motion to Alter or Amend Court's Order Granting Preliminary Injunction (ECF No. 39) is GRANTED IN PART and DENIED IN PART.

The Court's Order on Motion for Emergency Relief (ECF No. 31) is AMENDED and SUPPLEMENTED as follows:

Plaintiff's iPhone and Gmail account will be made available to the forensic examiner on a date or dates to be determined by the parties in consultation with the forensic examiner, having in mind a schedule that will minimize Plaintiff's dispossession of his iPhone and Gmail account access.

On the established date(s), the forensic examiner will access and examine the iPhone and the Gmail account for screenshots and/or snips created in March, April, May and June of 2025.  This examination will not extend to video files.

Having identified the offending materials described by Defendant in his Declarations, the forensic examiner will conduct a further review limited to finding similar image files potentially generated between March 2024 (when Defendant commenced employment with Plaintiff) and the date of the forensic examination.[3]

---

[3] I recognize that the timeframe I have authorized is wider than what Defendant described. However, based on its review of the offending materials that Defendant acknowledges generating in the March through June 2025 timeframe, the forensic examiner's review of image files generated between March 2024 and March 2025 and after June 2025 should amount to nothing more than a straight-forward and minimally invasive review for image files of the same kind as those Defendant acknowledges creating between March and June 2025.

Upon identification of offending materials the forensic examiner will preserve copies of the same for production to Plaintiff and will thereafter purge the offending materials from the iPhone and Gmail account.

Defendant will cooperate with the forensic examiner to facilitate this process, including by providing passwords and authorizations needed by the forensic examiner to complete these tasks.

Plaintiff may request a declaration from the forensic examiner that describes the examination, copying, and purging activity, for evidentiary purposes.

Plaintiff will bear the costs of the forensic examiner's services without prejudice to Plaintiff's ability to request that Defendant be taxed with the costs at the conclusion of this litigation.

If a further dispute arises as a consequence of the forensic examination, the parties may raise the matter by motion after conferring in good faith to resolve the dispute.

Other than as herein amended and supplemented, the September Order on Motion for Emergency Relief (ECF No. 31) remains in full force and effect.

SO ORDERED.

Dated this 5th day of December, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge